UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JACOB CLAVER, DIGITAL ASCENSION GROUP, LLC, and DIGITAL WEALTH PARTNERS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ZACH RECTOR and ENTREPRENEUR EXPOSED, LLC.<br><br>Defendants. | Case No.<br><br>COMPLAINT |

Plaintiffs Jacob "Jake" Claver, Digital Ascension Group ("DAG"), and Digital Wealth Partners ("DWP" and collectively, Plaintiffs), in support of their Complaint against Zach Rector ("Defendant") and Entrepreneur Exposed, LLC (collectively "Defendants"), hereby states the following:

**NATURE OF THE ACTION**

1. This action arises from a series of online publications by Defendant containing numerous false and defamatory statements about Plaintiff Jake Claver and his businesses, DAG and DWP.

2. Mr. Claver is a pioneer in the digital asset and cryptocurrency space. His knowledge and

COMPLAINT - 1
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
415.434.9100 FAX: 415.434.3947

trustworthiness in a complicated and rapidly evolving industry have resulted in the successful launch and rapid growth of his digital asset wealth management firm, DAG, as well as registered investment advisor, DWP.

3. Defendant is an analyst and social media content creator focusing on the digital asset and cryptocurrency space with approximately 156,000 subscribers on YouTube and 95,000 followers on X (formerly known as Twitter).

4. Dating back to 2023 when they first met, Mr. Claver and Defendant had a friendly and amicable relationship (or so Mr. Claver thought). They collaborated with one another in a professional capacity on numerous occasions, including Mr. Claver's appearance on Defendant's channel in one of Defendant's most popular videos.

5. In October 2025, that all changed when Defendant began to smear Mr. Claver's reputation, and those of the businesses he owns.

6. In videos posted to X, Defendant accused Mr. Claver of covering up fraud, lying to the public, and manipulating the XRP cryptocurrency community.

7. This smear campaign is seemingly driven by Defendant's affiliation with a competitor of Plaintiffs DAG and DWP (a competitor quickly and consistently losing market share and customers to Plaintiffs).

8. It goes without saying that credibility and trustworthiness are extremely important for individuals like Mr. Claver, and companies like Plaintiffs, who are entrusted with other people's hard-earned money. Accusations like those made by Defendant can destroy companies and careers. And here, Defendant's false statements have caused immediate and significant damage to Plaintiffs' business.

9. Plaintiffs bring this claim to halt these defamatory attacks and clear their names so they can set to restoring their (wrongfully) tarnished reputations.

## PARTIES

10. Plaintiff Jake Claver is an individual and a resident/citizen of the state of Texas.

COMPLAINT - 2
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
415.434.9100 FAX: 415.434.3947

11. Plaintiff DAG is a Wyoming limited liability company (DAG was previously named Digital Family Office LLC). DAG's sole member is DAG Holdings, Inc., a Delaware corporation with its principal place of business in Dallas, Texas.

12. Plaintiff DWP is a Wyoming limited liability company. DWP's sole member is DAG.

13. Defendant Zach Rector is an individual and a resident/citizen of the state of Washington.

14. Defendant Entrepreneur Exposed LLC is a Washington limited liability company. Upon information and belief, Defendant Rector is the sole member.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs are citizens of Wyoming, Delaware, and Texas. Defendants are citizens of Washington. Thus, there is complete diversity between the parties. Additionally, the amount in controversy exceeds $75,000.

16. This Court has general personal jurisdiction over Defendant as Defendant is a resident and citizen of Washington.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in Blaine, Washington and (b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

18. Mr. Claver is a leading expert in digital assets, blockchain, and Web3 technologies implementation.

19. Across his social media platforms, Mr. Claver maintains an audience exceeding 500,000 followers, through which he provides educational content concerning digital asset markets, secure custody practices, estate planning considerations, life insurance strategies, and the integration of digital assets into comprehensive financial planning. This content addresses issues of risk management, security, tax efficiency, and long-term wealth preservation.

20. In January 2023, Mr. Claver founded Beyond Broke, a MasterMind group and membership organization creating a network of 15,000+ high-achieving professionals focused on

COMPLAINT - 3
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
415.434.9100 Fax: 415.434.3947

brainstorming, education, and support.

21. In that same month, Mr. Claver founded a company called Digital Ascension Group (a separate company from the Plaintiff in this action). Digital Ascension Group's assets were transferred to DAG Holdings in 2024. DAG Holdings is the sole member of the Plaintiff entity DAG, which Mr. Claver founded in 2024 under the name Digital Family Office LLC. It was re-named DAG in November 2025.

22. Mr. Claver currently serves as DAG's CEO and Managing Director. DAG specializes in helping high net worth individuals and family offices structure, protect, and grow cryptocurrency and digital investments. DAG's offering of services includes digital asset wealth management, life insurance, LLC formation, estate planning, and multi-family office services such as bill pay, accounting, reporting, and concierge services.

23. In July 2024, Mr. Claver founded Digital Wealth Partners. DWP is an SEC-registered investment advisor that integrates traditional portfolio management with the evolving digital asset landscape. DWP helps clients thoughtfully incorporate digital assets into their broader financial picture, with a deep focus on compliance, regulatory awareness, and institutional-grade infrastructure. DWP's approach is designed to help provide clarity and peace of mind by enabling clients to move digital assets from private wallets into qualified custody, enhancing security, reporting, and estate-planning coordination. Through custodians such as Anchorage Digital, DWP supports a disciplined, long-term framework for managing digital wealth.

24. As a result of his prominence and experience in the industry, Mr. Claver has created world-class educational programs for family offices and digital asset professionals. He has also been featured in mainstream media outlets including MarketWatch, Bloomberg, and Yahoo! Finance.

*Relationship with Defendant Zach Rector*

25. Mr. Claver first met Defendant in person in 2023 in Las Vegas, where both were speakers at an event.

26. The two bonded over a shared interest in private equity deals, which Mr. Claver conducted

COMPLAINT - 4
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
415.434.9100 FAX: 415.434.3947

on a regular basis. To help facilitate Defendant's efforts to break into private equity, Mr. Claver created an LLC for Defendant called Ripple with Rector.

27. In September 2023, Mr. Claver and Defendant co-hosted another event in Dallas, Texas.

28. In early 2024, Defendant reached out to Mr. Claver and advised that he did not want to be affiliated because of a lawsuit pending at the time against Mr. Claver (the "Verivend suit"). The conversation was amicable and Mr. Claver understood. Mr. Claver did not lie or otherwise cover up anything about the lawsuit. Mr. Claver further explained to Defendant that he actually sent over 450,000 XRP to the third-party purported wire recipient and that the third-party was supposed to provide equity in return but never did. Instead, he stole Mr. Claver's money. So while the Verivend lawsuit is not flattering to Mr. Claver, it has served as a learning experience for Mr. Claver's subsequent endeavors, including DAG and DWP.

29. Later in 2024, the two reconnected and Defendant ended up hosting Mr. Claver on a podcast in March 2025. To this day, the video is one of Defendant's most popular, with over 57,000 views.

30. On March 14, 2025, DAG entered into an Affiliate Agreement with Defendant's company, Entrepreneur Exposed LLC.[1] The Affiliate Agreement provided compensation to Defendant for referrals to DAG's LLC formation business. Notably here, the Affiliate Agreement contained a requirement that Defendant "Not make any false or misleading claims about the Company's services."

31. Mr. Claver and Defendant recorded another video together in late May/early June 2025 at another conference in Las Vegas.

32. Beyond their social media collaborations, at various times, both Mr. Claver and Defendant have served as affiliates of Caleb and Brown, a cryptocurrency brokerage. (Caleb and Brown is now a competitor to the Plaintiff entities).

---

[1] A true and correct copy of the Affiliate Agreement is attached hereto as Exhibit 1.

COMPLAINT - 5
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
415.434.9100 FAX: 415.434.3947

33. Mr. Claver was an affiliate of Caleb and Brown up until May 2025 when he ended the relationship. Caleb and Brown's business model was based on trading fees, which Mr. Claver believed created a potentially perverse incentive when holding an asset may be in a client's best interest. He also believed the trading fees were too high.

34. Defendant still has an affiliate relationship with Caleb and Brown.

35. On October 8, 2025, Mr. Claver texted Defendant a video about why citizens of Washington should set up LLCs in Wyoming. Defendant did not respond for nine (9) days.

36. Around that time, an X account with the handle DWPInvestor was created. This handle regularly posts defamatory content about DWP. For example, in October, 2025, DWPInvestor posted DWP "hasnt [sic] paid any distributions from their xrp hedge fund" and made a similar post in November, 2025, stating "nobody can share any distributions from DWP because their [sic] haven't been any." These statements are objectively false. It appears that Defendant is behind the DWPInvestor account.

37. As a result, Mr. Claver called Defendant on or around October 17, 2025 in an attempt to resolve any differences that existed. Defendant did not answer and did not call back.

*Publication of the Defamatory Videos*

38. On December 30, 2025, Defendant hosted a one hour and 39-minute live stream on his X account. In this video, Defendant stated that "not everybody is to be trusted in this space," which given the context, is a clear implication that Mr. Claver is a liar and cannot be trusted. Defendant went on to state that: Mr. Claver "lied…about some things that happened in the past" and "didn't disclose" things. From context, these both appear to be references to the Verivend suit. Defendant painted Mr. Claver as an individual who tried to hide information from Defendant, a potential business partner, through outright lies.

39. Defendant also stated that "lies are being told" to the public based on DWP's funds and that "publicly he [Mr. Claver] is making claims that are not true."

40. On December 31, 2025, Defendant posted a two-part video containing numerous other

COMPLAINT - 6
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
415.434.9100 FAX: 415.434.3947

1  defamatory statements.[2] Notably:

2      a. that Mr. Claver has "covered up…his frauds";

3      b. that Mr. Claver has lied to the public about the "returns, or lack thereof, in Digital

4         Wealth Partners"; and

5      c. that Plaintiffs are not undertaking a third-party audit and accordingly have not

6         accurately disclosed performance to investors.

7     41. Defendant went on to claim that he was "fooled into thinking Jake was an honest man who

8  had good intentions" but that he "lied to me about their business history about a lawsuit that

9  involved their private equity dealings."

10     42. These videos were posted to drive traffic and views to Defendant's various social media

11  handles and platforms.

12  <u>*The Statements in the Videos Were False and Defamatory*</u>

13     43. The statements in Defendant's videos are demonstrably false and defamatory.

14     44. As a threshold matter, Mr. Claver never lied about or concealed any information from

15  Defendant, including the Verivend suit. Defendant was aware of the Verivend suit in early 2024,

16  shortly after it was filed, and actually used that as an excuse to distance himself from Mr. Claver

17  for a short time. Defendant further admits in one of his videos that the lawsuit is a matter of public

18  record that anyone can access.

19     45. Defendant's statements that Mr. Claver is lying to the general public also are false.

20     46. DWP offers two different 506(c) funds, and two different 506(b) funds. All funds are

21  managed by third party sub-advisors. All funds are private funds, which means Plaintiffs are

22  cognizant of the public marketing they can provide consistent with applicable SEC regulations.

23  Given the regulatory restrictions on public solicitation, Plaintiffs take steps to limit and control

24  public communications.

---

[2] These videos were published on multiple platforms, including X and threads.

COMPLAINT - 7  
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP  
Four Embarcadero Center, 17th Floor  
San Francisco, CA 94111  
415.434.9100 FAX: 415.434.3947

47. The 506(b) funds allow for DWP to take a certain number of non-accredited investors, but Plaintiffs cannot speak about them publicly. Mr. Claver has never mentioned the 506(b) funds in any public forum. Mr. Claver only speaks publicly about, and solicits funds for, the 506(c) funds, and at all times has represented them accurately.

48. Contrary to Defendant's statements, multiple distributions have been made reflecting positive returns.

*Consequences of the Defamatory Videos*

49. Publication of the defamatory videos has been and continues to be highly damaging to Plaintiffs' reputation and business.

50. Defendant's statements paint Mr. Claver as someone who cannot be trusted, and as an individual who will lie or conceal material information from potential business partners. These false allegations are extremely damaging to Mr. Claver – a young entrepreneur always looking for partnerships and business opportunities in a relatively small, tight-knit community. Reputation matters, particularly so in the digital asset investment space given its complicated and rapidly evolving nature.

51. Foreseeably, multiple other content creators in the crypto/digital asset space have picked up Defendant's videos and created their own content based thereon. This has led to further spread of Defendant's false statements.

52. Multiple trade and online publications have also written articles featuring the defamatory statements.

53. There also is significant traffic on Reddit discussing the defamatory statements as well.

54. Month to month revenues for DWP are already down significantly, and several large (seven figure) potential clients who were in the midst of the onboarding process have stated they will not be moving forward. One of those potential investors emailed Mr. Claver "I'm going to have to wait until the whole fraud issue is dealt with that's recently come up."

55. Defendant's videos, and the foreseeable ensuing spread, have damaged Plaintiffs' client

COMPLAINT - 8
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111
415.434.9100 FAX: 415.434.3947

relationships. Multiple existing clients (including several ultra high net worth clients) have withdrawn their funds. Customer Support teams at both DAG and DWP, as well as the financial advisors at DWP, have fielded a plethora of phone calls and emails from concerned clients since the videos dropped. It will require significant effort by Plaintiffs to rebuild trust with existing clients.

56. Mr. Claver has also been removed as a speaker at a prominent upcoming conference due to Defendant's statements. Conferences like this raise Mr. Claver's profile, and that of his companies, and are important networking opportunities for new clients and business ventures. Plaintiffs will now miss out on those opportunities.

57. While Defendant has removed the two videos posted to X on December 31, 2025 (seemingly in recognition of their defamatory content), other videos remain up, and in any event, the damage has been done.

58. Plaintiffs bring this action now to clear their name and hold Defendant accountable for his false and defamatory content.

## COUNT ONE

(Defamation/Defamation *per se*)

59. Plaintiffs repeat and re-allege each of the foregoing paragraphs as if set forth fully herein.

60. Defendant published defamatory videos in various posts on X and other platforms on December 30 and 31, 2025.

61. The videos contained the following false and defamatory statements concerning Plaintiffs:

   a. Mr. Claver "lied…about some things that happened in the past" and further "lied to me about their business history about a lawsuit that involved their private equity dealings," both in clear reference to the Verivend suit.

   b. that "lies are being told" by Mr. Claver to the public based on DWP's funds and that "publicly he [Mr. Claver] is making claims that are not true."

   c. that Mr. Claver has "covered up…his frauds."

COMPLAINT - 9
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111
415.434.9100 FAX: 415.434.3947

    d.  that Mr. Claver has lied to the public about the "returns, or lack thereof, in Digital Wealth Partners."

    e.  that Plaintiffs are not undertaking a third-party audit and accordingly have not accurately disclosed performance to investors.

62. These statements are of and concerning Plaintiffs, as Mr. Claver and his companies are explicitly named in the videos.

63. These statements carry the unmistakable defamatory meaning, both explicit and implicit, that Plaintiffs are engaged in fraud, deceptive business practices, and lying to the public.

64. These statements are false. For example:

    a.  Defendant knew about the Verivend suit shortly after it was filed in late 2023. The suggestion that Mr. Claver lied and concealed information from Defendant in an effort to mislead him is false.

    b.  Plaintiffs have not told any lies about DWP's funds or returns (and there are, in fact, returns).

    c.  Plaintiffs are undertaking a third-party audit and have at all times accurately disclosed performance to investors.

65. Defendant's statements are defamatory per se because they injure Plaintiffs in their business, trade, or profession.

66. These statements are unprivileged.

67. At the time of publication, Defendant knew these statements were false, or acted in reckless disregard of the truth, or at least acted negligently as to the veracity of these statements.

68. By publishing these false statements, Defendant caused significant harm to Plaintiffs' reputation. The injury to Plaintiffs' reputation is readily apparent as the statements lower Plaintiffs in the estimation of the community and deter third persons from associating or dealing with them.

69. As a direct and proximate result of these false statements by Defendant, Plaintiffs have suffered damages, including without limitation, damage to their reputation, loss of goodwill in the

COMPLAINT - 10
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111
415.434.9100 FAX: 415.434.3947

community, loss of potential clients/income, and loss of existing clients. Plaintiffs' damages grow every day with the loss of additional clients and potential clients.

70. Defendant's actions were malicious, willful, and wanton, and evidence a conscious disregard of Plaintiffs' rights. Accordingly, punitive damages are appropriate.

## COUNT TWO

(Tortious Interference)

71. Plaintiffs repeat and re-allege each of the foregoing paragraphs as if set forth fully herein.

72. Plaintiffs have valid contractual relationships with their clients, as well as reasonable business expectancy from potential clients.

73. Defendant had knowledge of these relationships. He is familiar with Plaintiffs' business and target clientele.

74. In launching this smear campaign, Defendant acted with an improper purpose/motive and utilized improper means to intentionally interfere with those relationships and cause damage thereto.

75. Defendant was motivated by hostility and greed, both in terms of driving traffic to his social media pages and also for the benefit of Caleb and Brown, with whom he has an affiliate relationship.

76. Defendant desired for Plaintiffs to lose clients and potential clients, or alternatively, acted knowing with substantial certainty that loss of clients and potential clients would occur as a result of his actions.

77. Revenues are down, multiple existing clients (including several ultra high net worth clients) have withdrawn their funds, and multiple significant clients who were in the midst of the onboarding process have informed Plaintiffs they are no longer proceeding. Plaintiffs' damages grow every day with the loss of additional clients and potential clients.

COMPLAINT - 11
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111
415.434.9100 FAX: 415.434.3947

## COUNT THREE

(Breach of Contract)

78. Plaintiffs repeat and re-allege each of the foregoing paragraphs as if set forth fully herein.

79. The Affiliate Agreement established a valid contractual relationship between DAG and Entrepreneur Exposed LLC.

80. DAG performed all its obligations under the contract.

81. Entrepreneur Exposed LLC, through Defendant, breached the Affiliate Agreement by making "false or misleading claims about the Company's services."

82. DAG was damaged by Defendants' breach.

83. Defendants' breach was the direct and proximate cause of DAG's damages, which grow every day with the loss of additional clients and potential clients.

WHEREFORE, Plaintiffs respectfully request that the Court enter an award in Plaintiffs' favor and against Defendants, as follows:

(1)   awarding Plaintiffs damages of $30 million or such other amount to be proven at trial;

(2)   awarding Plaintiffs punitive damages;

(3)   requiring Defendant to take the offending videos down; and

(4)   granting such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial on all issues so triable.

COMPLAINT - 12
Case No.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111
415.434.9100 FAX: 415.434.3947

| | | |
|---|---|---|
| 1 | Dated:  January 9, 2026 | SHEPPARD MULLIN RICHTER & HAMPTON LLP |
| 2 | | |
| 3 | | */s/Robert J. Guite* |
| 4 | | Robert J. Guite, WSBA No. 25753 |
| 5 | | Four Embarcadero Center<br>Seventeenth Floor<br>San Francisco, CA 94111 |
| 6 | | Tel. (415) 774-3176 |
| 7 | | Fax (415) 403-6014<br>RGuite@sheppardmullin.com |
| 8 | | |
| 9 | | Benjamin G. Chew (*pro hac vice* forthcoming) |
| 10 | | Andrew C. Crawford (*pro hac vice* forthcoming) |
| 11 | | SHEPPARD MULLIN RICHTER & HAMPTON LLP |
| 12 | | 2099 Pennsylvania Ave., N.W., Suite 100<br>Washington, D.C. 20006-6801 |
| 13 | | Tel. (202) 747-1862<br>Fax (202) 747-3912 |
| 14 | | BChew@sheppardmullin.com<br>ACrawford@sheppardmullin.com |
| 15 | | |
| 16 | | Attorneys for Plaintiffs |

COMPLAINT - 13
Case No.